**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>Jesus Joel Valle-Irizarry,<br><br>         Defendant | Crim. Action No. 14-00103 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Jesus Joel Valle-Irizarry ("Defendant")'s request for an evidentiary hearing in connection with his pretrial motion to suppress evidence seized from a vehicle in which he was a passenger on August 8, 2013. The Court has considered the submissions made in support of and in opposition to the instant motion. The Court has also considered the arguments made on the record during oral argument held on May 15, 2014. For the reasons set forth below, Defendant's motion to suppress is **DENIED** without an evidentiary hearing.

**I.    BACKGROUND**

    A.  Factual Background

The facts giving rise to Defendant's request for an evidentiary hearing in connection with the present motion to suppress evidence are as follows. On August 8, 2013, Task Force Officer ("TFO") Joseph Agarone of the Drug Enforcement Administration ("DEA") received a tip from a reliable confidential informant ("CI") that two men, Defendant and Christian Valle-Irizarry ("Irizarry") were attempting to sell one kilogram of cocaine in Elizabeth, New Jersey. (Def.'s

1

Br. 1; CM/ECF No. 16; Def.'s Ex. 1 at 1). The CI informed law enforcement agents that the two men were currently passengers in a Ford Fusion (the "Ford Fusion" or "vehicle") and provided the officers with the license plate number of the vehicle. (Def.'s Br. 1; Def.'s Ex. 1 at 1). The CI additionally provided the officers with the current location of the vehicle and alerted them to the fact that cocaine was presently in the vehicle. (Def.'s Br. 1; Def.'s Ex. 1 at 1). It bears mentioning that the vehicle is registered to PV Holding Corp., of Orlando, Florida, rather than to the driver of the vehicle or any of the passengers.[1] (Def.'s Ex. 1 at 1).

Based on the tip from the CI, the DEA agents developed a plan to locate the vehicle, set up surveillance and stop the vehicle. (Def.'s Br. 1; Def.'s Ex. 1 at 1). Around 3:00 p.m., members of the DEA, the Mercer County Prosecutor's Office and the Elizabeth Police Department initiated a stationary surveillance in the area of 2nd Ave, Elizabeth, New Jersey which resulted in the location of the vehicle. (Def.'s Br. 1; Def.'s Ex. 1 at 2). At about 3:42 p.m., the officers observed three individuals including Defendant and Irizarry walking on 2nd Avenue towards the vehicle. (Def.'s Ex. 1 at 2). The third individual was the driver of the car, Yamil Sanjuro Cordero. (*Id.*). The three men then entered the vehicle. (Def.'s Br. 1; Def.'s Ex. 1 at 2). At this time, the vehicle drove away at which time the officers initiated a mobile surveillance and followed the vehicle. (Def.'s Ex. 1 at 2). The vehicle then stopped near a bodega at 3rd Avenue and Pine Street, also in Elizabeth, New Jersey. (Def.'s Br. 1; Def.'s Ex. 1 at 2). Once the car stopped near the bodega, Defendant exited the car and entered the bodega. (*Id.*). At about 3:49 p.m., Defendant exited the bodega carrying a paper shopping bag and reentered the vehicle. (*Id.*). The vehicle then departed the area and the agents again initiated a mobile surveillance and followed the vehicle. (*Id.*). The vehicle returned to the area of 2nd

---

[1] Following a May 28, 2014 subpoena it was further determined that the vehicle owned by PV Holding Corp., was rented to Cynthia Bou. (*See* Govt.'s Supp. Br. 1 n.1; CM/ECF No. 22).

2

Avenue and Clark Place in Elizabeth, New Jersey. (*Id.*). Upon parking the vehicle, the three men exited the vehicle and entered an apartment at 258 2nd Avenue in Elizabeth, New Jersey. (*Id.*).

After a short period of time, Defendant exited the apartment carrying a blue colored camera bag. (*Id.*). At this time, Defendant reentered the rear passenger side of the vehicle. (Def.'s Br. 1-2; Def.'s Ex. 1 at 2). Immediately thereafter, the other two men emerged from the apartment and also entered the vehicle. (Def.'s Br. 2; Def.'s Ex. 1 at 2-3). The vehicle then departed the area and a mobile surveillance was initiated. (Def.'s Br. 2; Def.'s Ex. 1 at 3). While the vehicle was driving on Division Street in Elizabeth, New Jersey, the officers effectuated a motor vehicle stop of the vehicle. (*Id.*). Two DEA agents, TFO Angarone and Cicala conducted the motor vehicle stop. (Def.'s Ex. 1 at 3). Thereafter, the three occupants were removed from the vehicle. (Def.'s Br. 2; Def.'s Ex. 1 at 3). Upon being removed from the vehicle, the three men were advised of the DEA's investigation. (Def.'s Ex. 1 at 3). TFO Cicala then removed the blue camera bag from the rear passenger area of the vehicle and discovered two vacuum sealed bags which contained a large amount of a white powdery substance believed to be cocaine. (*Id.*). The three men were then arrested and transported to the DEA New Jersey Division Headquarters. (*Id.*).

B. <u>Procedural History</u>

On March 4, 2014, a federal grand jury returned a one-count indictment charging Defendant with knowingly and intentionally distributing and possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. (CM/ECF No. 13). On April 15, 2014, Defendant filed a pretrial motion to suppress

3

the evidence against him and requested an evidentiary hearing to determine the legality of the search and seizure. (CM/ECF No. 16). The Government filed a brief in opposition to Defendant's motion on May 6, 2014. (CM/ECF No. 18). The Court held oral argument on May 15, 2014. (CM/ECF No. 20). At this time, the Court directed Defendant that he may supplement the record. (*Id.*). In particular, the Court directed Defendant to address the issues of standing and consent to search the vehicle and the blue camera bag in his supplemental submissions to the Court. (*Id.*). Thereafter, on May 23, 2014, Defendant's counsel submitted a letter to the Court arguing that Defendant has standing to contest the search of the vehicle and the subsequent search of the blue camera bag. (Def.'s Supp. Br.; CM/ECF No. 21). Defendant attached an affidavit from Cordero ("Cordero Affidavit") to this submission. (CM/ECF No. 21-1). The Government filed a brief in further opposition to Defendant's motion on May 28, 2014. (Govt.'s Supp. Br.; CM/ECF No. 22)

## II. LEGAL STANDARD

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Federal Rule of Criminal Procedure 12(b)(3)(C) allows defendants to file motions to suppress evidence before trial. *See* Fed.R.Crim.P. 12(b)(3)(C); *see also United States v. Hines,* 628 F.3d 101, 105 (3d Cir. 2010). However, an evidentiary hearing for a motion to suppress is not granted as a matter of course. *See* Fed.R.Crim.P. 12(c) ("The court may schedule a motion hearing."); *see also United States v. Blackman,* 407 F. App'x 591, 594-95 (3d Cir. 2011) (citing *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.1990)) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one."). Rather, an evidentiary hearing is required only when a defendant's motion is

"sufficiently specific, non-conjectural, and detailed" so as to show: (1) a "colorable" constitutional claim; and (2) disputed issues of fact material to its resolution. *Hines,* 628 F.3d at 105; *see also United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir. 1996) (holding that a motion to suppress only entitles a defendant to a pretrial evidentiary hearing when a defendant's moving papers demonstrate a "colorable claim for relief."). "In order to be 'colorable,' a defendant's motion must consist of more than mere bald-faced allegations of misconduct." *Voigt,* 89 F.3d at 1067. In order to receive a pretrial evidentiary hearing, there must be "significant factual disputes." *United States v. Jackson,* 363 F. App'x 208, 210 n.2 (3d Cir. 2010). A defendant seeking such a hearing must make a prima facie showing of the alleged wrongdoing. *United States v. Nissenbaum,* 50 F. App'x 87, 87-88 (3d Cir. 2002).

To prevail on a motion to suppress, a defendant generally bears the burden of proving that the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta,* 965 F.2d 1248, 1257 n. 9 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). However, when a search is conducted without a warrant, as is the case here, the burden shifts to the Government to demonstrate by a preponderance of the evidence that the warrantless search did not run afoul of the Fourth Amendment. *See, e.g., United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995).

### III.   DISCUSSION

In deciding whether the seizure and subsequent search of the Ford Fusion and the blue camera bag violated Defendant's Fourth Amendment rights, the Court must consider the following: (1) whether Defendant has standing to challenge the search of the Ford Fusion and the

blue camera bag; and (2) whether assuming Defendant has standing to challenge the search of the Ford Fusion and the blue camera bag, consent was properly acquired.

      A.    <u>Defendant's Standing to Challenge the Search of the Ford Fusion and the Blue Camera Bag</u>

Defendant challenges the search of both the vehicle and the blue camera bag on the basis that he "clearly had an expectation of privacy in the contents of the car, especially the bag from which the cocaine was seized." (*See* Def.'s Supp. Br. 1). The Government, on the other hand, counters that Defendant was not entitled to a reasonable expectation of privacy as to the vehicle or the blue camera bag therein. (*See* Govt.'s Supp. Br. 1-2). The Court will address each of these arguments in turn.

As an initial matter, "Fourth Amendment standing requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (ellipsis in original) (internal quotation marks and citations omitted). That is, Fourth Amendment standing requires a reasonable expectation of privacy from both an objective and subjective standpoint. *See, e.g., Kyllo v. United States*, 533 U.S. 27, 33 (2000) ("[A] Fourth Amendment search does not occur . . . unless the individual manifested a subjective expectation of privacy in the object of the challenged search, and society is willing to recognize that expectation as reasonable.") (internal quotation marks and citation omitted). "[A] reasonable or legitimate expectation of privacy must have a 'source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Kennedy*, 638 F.3d at 164 (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

1. <u>Whether Defendant has Standing to Challenge the Search of the Ford Fusion</u>

The Court must determine whether Defendant, as a passenger in the Ford Fusion, has standing to challenge the warrantless search of the vehicle. The Government contends that Defendant lacks standing on the basis that he was a passenger in the vehicle. (*See* Govt.'s Supp. Br. 2).

As an initial matter, "[p]assengers in cars, unlike owners or licensees, have no reasonable expectation of privacy in the interior of the vehicle in which they are riding." *United States v. Mosley,* 454 F.3d 249, 252-53 (3d Cir. 2006). Since "the Fourth Amendment's protection against unreasonable searches is predicated on the invasion by the government of a person's reasonable expectation of privacy, passengers are generally held to lack standing[ ] to object to evidence discovered in a search of a vehicle." *Id.* at 253 (internal citations and quotations omitted). As to a rental vehicle, the Third Circuit has held that "a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car." *United States v. Baker,* 221 F.3d 438, 441-42 (3d Cir. 2000) (citing *Rakas v. Illinois,* 439 U.S. 128, 133-34 (1978)). Furthermore, passengers will additionally "lack standing to challenge the search of the rental car [when they are] not listed on the rental agreement as authorized drivers." *United States v. Mebrtatu,* 543 F. App'x 137, 139 (3d Cir. 2013).

It is undisputed by the parties that Defendant was a passenger in the vehicle at the time of the stop and subsequent search of the vehicle. (Def.'s Br. 1-2; Def.'s Supp. Br. 1; Tr. 4:1-4; Govt.'s Oppn. Br. 1; Govt.'s Supp. Br. 1). The vehicle is owned by PV Holding Corp., of Orlando, Florida. (*See* Def.'s Ex. 1 at 1). Following a subpoena issued by the Government, it was further discovered that the vehicle was rented to Cynthia Bou. (*See* Govt.'s Supp. Br. 1 n. 1). It bears mentioning that, Cynthia Bou was neither the driver nor an occupant of the vehicle at

the time of the stop and subsequent search. Of critical importance is the fact that the Defendant was neither the authorized driver of the rental vehicle nor listed as an authorized driver and therefore, he has no standing to challenge the search of the vehicle. *See Baker,* 221 F.3d at 441-442 ("It is clear that a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car."); *see also Mebrtatu,* 543 F.App'x at 140 (holding that where the rental company had only authorized one person to drive the car, "none of the defendants ... had standing to challenge the search of the car").

The Court highlights Defendant's reliance on *Brendlin v. California,* 551 U.S. 249 (2007) to support the assertion that Defendant has standing to challenge the search of the Ford Fusion. (*See* Def.'s Supp. Br. 1-2). The Supreme Court's decision in *Brendlin* stands for the proposition that a passenger has standing to contest the legality of a traffic stop. *See generally Brendlin,* 551 U.S. 249. Defendant's reliance on *Brendlin*, however, is misplaced because the facts in *Brendlin* are distinct from the facts presented in this matter. In *Brendlin*, the defendant claimed that the traffic stop itself was in violation of the Fourth Amendment, whereas, here Defendant does not contest the basis for the initial stop of the vehicle itself. *See id.* at 253; (*see also* Def.'s Supp. Br.). Furthermore, the defendant in *Brendlin*, did not assert that his Fourth Amendment rights were violated by way of a subsequent search of the vehicle. Since the Defendant in this case is not challenging the legality of the traffic stop itself, but rather the subsequent search, the Court's holding in *Brendlin* is not applicable to the present facts. (*See generally* Def.'s Supp. Br.).

For the aforementioned reasons, Defendant lacks standing to challenge the search of the Ford Fusion. Accordingly, the Court concludes that the search of the vehicle did not violate Defendant's Fourth Amendment rights. *See Mebrtatu,* 543 F. App'x at 139 (internal quotations omitted) (citing *Baker,* 221 F.3d at 441) (holding that "[s]tanding to challenge a search requires

that the individual challenging the search have a reasonable expectation of privacy in the property searched").

    2. <u>Whether Defendant has Standing to Challenge the Search of the Blue Camera Bag</u>

Defendant similarly asserts that he has standing to challenge the search of the blue camera bag located therein. In particular, Defendant asserts that he maintained a reasonable expectation of privacy as to the contents of the blue camera bag. (Def.'s Supp. Br. 2). The Government, on the other hand, argues that as a passenger Defendant lacked an objectively reasonable expectation of privacy as to the blue camera bag and furthermore, Defendant failed to manifest a subjective expectation of privacy as to the blue camera bag. (Govt.'s Supp. Br. 2).

As a preliminary matter, the Supreme Court has held that "the Fourth Amendment does not compel separate treatment for an automobile search that extends ... to a container within the vehicle." *California v. Acevedo,* 500 U.S. 565, 572-76 (1982). Rather, the Supreme Court's holding in *United States v. Ross,* 456 U.S. 798 (1982), stands for the proposition that "closed containers in cars could be searched without a warrant because of their presence within the automobile ... [and] the privacy interest in those closed containers yield[s] to the broad scope of an automobile search." *California,* 500 U.S. at 572 (citing *Ross,* 456 U.S. 798). Additionally, in *Kennedy,* the Third Circuit approvingly cited *United States v. Wellons,* a case in which the Fourth Circuit held that "one who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile." *See* 32 F.3d 117, 119 (4th Cir. 1994) (cited in *Kennedy,* 638 F.3d at 165). Notably, a defendant's actions are "completely inconsistent with the contention that [defendant] retain[s] an expectation of privacy" where the defendant "st[ands] by and watche[s the car be searched] without objection." *United States v. Anderson,* 859 F.2d 1171, 1177 (3d Cir. 1988).

Here, it is undisputed that the law enforcement agents were informed by the CI that the Ford Fusion contained cocaine. (Def.'s Br. 1; Def.'s Ex. 1 at 1). The agents, however, were not informed of the precise location of the cocaine within the vehicle. (*See* Def.'s Ex. 1 at 1). As such, the officers were in fact permitted to conduct a warrantless search of any closed containers located inside the vehicle. *See Ross*, 456 U.S. at 824 (holding that "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted [but r]ather ... by the object of the search ...").

Defendant additionally asserts that because the law enforcement agents observed him holding the blue camera bag as he entered the vehicle, they knew that the bag belonged to Defendant. (Def.'s Supp. Br. 1). However, Defendant's possession of the blue camera bag does not establish that he had a privacy interest in the bag. In *United States v. Shabazz,* the Third Circuit held that where officers observed the defendant holding bags prior to placing them in the trunk of the car, such observations were insufficient to establish defendant's privacy interest in the bags. 533 F. App'x 158, 162 (3d Cir. 2013). Here, Defendant has not asserted nor has Defendant furnished any evidence that he expressed his ownership over the blue camera bag either before or during the search of the vehicle. (*See generally,* Def.'s Supp. Br.; *see also* Def.'s Ex. 1). A defendant who fails to alert the officers to his ownership interest over a container or bag within the vehicle ultimately does not retain an expectation of privacy. *See Anderson,* 859 F.2d at 1177. Therefore, the Court concludes that Defendant did not maintain an expectation of privacy over the blue camera bag. Accordingly, the officers' search of the blue camera bag did not violate Defendant's Fourth Amendment rights.

10

B.  Whether Consent To Search the Ford Fusion and the Blue Camera Bag was Properly Acquired

Defendant argues that even if Cordero had consented to a search of the vehicle, such consent was insufficient to authorize the search of the blue camera bag. (*See* Def.'s Supp. Br. 2). The Government argues that even if Defendant has standing to challenge the search, the officers nevertheless, had probable cause to search the vehicle and the containers therein, thereby precluding the issue of consent. (*See* Govt.'s Supp. Br. 3). For the reasons set forth below, this Court determines that the agents were not required to gain consent from the driver of the vehicle on the basis that they had probable cause to seize and search the vehicle.

It is well established that law enforcement officers are permitted to "seize and search an automobile without a warrant if probable cause exists to believe it contains contraband." *United States v. Burton,* 288 F.3d 91, 100 (3d Cir. 2002). "While a seizure or search of property without a warrant ordinarily requires a showing of both probable cause and exigent circumstances, the ready mobility of automobiles permits their search based only on probable cause." *Id.* (internal citations and quotations omitted). Probable cause may be established when a reliable informant provides detailed information, including a physical description of the vehicle within which a defendant is traveling, to police officers and the officers corroborate this information through their own surveillance. *See e.g. Draper v. United States,* 358 U.S. 307, 309-310, 313 (1959) (holding that the informant's information as corroborated by the police, was sufficient to establish probable cause to seize and search the Defendant); *see also United States v. Thompson,* 545 F. App'x 167, 170 (3d Cir. 2013) (holding that where "[t]he informant described the vehicle [Defendant] would be driving, the number of passengers in the vehicle and their race, and the route [Defendant] would take" which was "corroborated ... through [the officers'] own surveillance" probable cause existed to stop the vehicle). The Supreme Court has held that

11

"police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Wyoming v. Houghton,* 526 U.S. 295, 307 (1999).

Defendant asserts that even if Cordero consented to the search of the vehicle, that consent does not extend to Defendant's blue camera bag.[2] (Def.'s Supp. Br. 2). The CI provided details of the vehicle and its location to law enforcement officers. (*See* Def.'s Br. 1; *see also* Def.'s Ex. 1). In particular, the CI provided law enforcement officers with the make, model, plate number and location of the car. (*Id.*). Law enforcement officers then located the vehicle based on the information from the CI and subsequently set up surveillance. (*Id.*). During their surveillance of the vehicle, the officers observed the three men enter the vehicle and drive to a bodega at which time Defendant exited the vehicle and went into the bodega. (Def.'s Br. 1; Def.'s Ex. 1 at 2). Shortly thereafter, Defendant emerged from the bodega carrying a paper shopping bag. (*Id.*). The Defendant reentered the vehicle at which time the car proceeded back to the area of 2nd Avenue and Clark Place in Elizabeth, New Jersey. (*Id.*). At that time, the officers observed all three men exit the car and go into an apartment for a short period of time, after which, Defendant emerged with the blue camera bag. (*Id.*). Defendant again entered the vehicle and almost immediately, the other two men emerged from the apartment and similarly entered the vehicle. (Def.'s Br. 1-2; Def.'s Ex. 1 at 2-3). The vehicle then left the area and the officers followed the car until they initiated the motor vehicle stop and subsequent search of the Ford Fusion and the blue camera bag. (Def.'s Br. 2; Def.'s Ex. 1 at 3). By locating the vehicle and personally observing the aforementioned sequence of events, the officers corroborated the information

---

[2] It bears mentioning that Defendant attached an affidavit from Cordero to his May 23, 2014 submission to the Court, in which Cordero stated that he did not provide the officers with consent to search the vehicle at the time of the motor vehicle stop. (*See* Cordero Affidavit). However, for the reasons stated herein, the Court need not address this assertion in light of the fact that probable cause supported the officers' search of the vehicle, thereby, precluding the issue of consent.

provided by the CI and thus, were furnished with probable cause to seize and search the vehicle. *See Thompson,* 545 F. App'x at 170-71 (holding that the stop of a vehicle was supported by probable cause where "[t]he [officers] corroborated ... information [provided to them by a reliable informant] through their own surveillance" and based on the same "[the officers] had probable cause to search [the vehicle]").

In light of the fact that the officers had probable cause to believe that there was contraband in the vehicle based on their own observations coupled with the information provided by the CI, the officers could conduct a warrantless search of the vehicle in accordance with the Fourth Amendment. *See Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996) (internal citations omitted) (holding that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more"); *see also United States v. Ushery,* 400 F. App'x 674, 676 n. 3 (3d Cir. 2010) (the Court held that where "probable cause supported the search even in the absence of consent, [the Court need not address Defendant's argument that consent was unlawfully obtained]"). Accordingly, the Court agrees with the Government and finds that the officers were authorized to conduct the warrantless search of the vehicle and the containers therein, on the basis of probable cause, thereby precluding the issue of consent.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that no evidentiary hearing is necessary, and Defendant's motion to suppress the evidence against him is **DENIED**. An appropriate order accompanies this Opinion.

Jose L. Linares
United States District Judge

Date: July 22, 2014